## Case No. 9,842.
### MORRISON et al v. ARTHUR.
[13 Blatchf. 194; [1] 22 Int. Rev. Rec. 10.]

Circuit Court, S. D. New York. Nov. 15, 1875.[2]

CUSTOMS DUTIES—ACT 1864—SILK VEILS—CRAPE VEILS—TERMS USED IN TRADE.

1. The 8th section of the act of June 30th, 1864, (13 Stat. 210,) provides for a duty of 60 per cent. ad valorem on "silk veils," and for a duty of 50 per cent. ad valorem "on all manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for." The term "silk veils," in the absence of any other language in the statute, includes all veils made of silk, and the presumption is that

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
2 [Affirmed in 96 U. S. 108.]

"crape veils," being manufactured of silk, are embraced within the term "silk veils."

2. But, if it be shown, that, in trade and commerce, "crape veils" are not "silk veils," that is, are contradistinguished from "silk veils," and are commercially known as different articles from "silk veils," and that the term "crape veil" is a distinctive term, which distinguishes the article called by that name from a "silk veil," then the term "silk veil" fails to designate a "crape veil," and "crape veils" are dutiable under the clause of the statute relating to manufactures of silk.

[This was a suit by George A. Morrison, John Herriman, and Joseph A. Alexander against Chester A. Arthur, to recover certain money paid for duties illegally exacted.]

Benjamin L. Ludington and George D. Lord, for plaintiffs.

Henry E. Tremain, Asst. Dist. Atty., for defendant.

SHIPMAN, District Judge. This is an action of assumpsit, to recover moneys paid under protest for duties which were exacted by the defendant, as collector of the port of New York, upon crape veils imported by the plaintiffs in the year 1871. The defendant pleaded specially, that the moneys alleged to have been paid were had and received by the defendant, as said collector, "in payment for duties due from plaintiffs to the United States on certain importations from a foreign country into the port of New York," and that said moneys "constitute a part of the lawful duty of sixty per cent. ad valorem then due and owing to the United States by plaintiffs, for the duty at said rate on silk veils then and there imported as aforesaid, which said silk veils were dutiable accordingly under section eight of the act of congress entitled, 'An act to increase duties on imports and for other purposes,' approved June 30th, 1864," and that the said amount of duty "was and is the true and lawful duty on the said silk veils." The replication of the plaintiffs averred, that they ought not to be barred, &c., because "they say, that the articles imported by the plaintiffs were not silk veils, and were not, at the time of the importation and entry thereof, liable to a duty of sixty per cent. ad valorem, but the same were a manufacture of silk, and were crape veils, and, at the time of the passage of said act, approved June 30th, 1864, and before and at the time of their importation, they were commercially known, among importers and dealers, and were bought and sold, as crape veils, and never otherwise, and were liable to a duty of fifty per cent. ad valorem, as a manufacture of silk." To this replication the defendant demurred generally.

The portion of the 8th section of the statute of June 30th, 1864 (13 Stat. 210), which is material. is as follows: "That, on and after the day and year aforesaid, in lieu of the duties heretofore imposed by law on the articles hereinafter mentioned. there shall be levied, collected and paid, on the goods, wares, and merchandise enumerated and provided for in this section, imported from foreign countries, the following duties and rates of duty, that is to say, * * * on silk vestings, pongees, shawls, scarfs, mantillas, pelerines, veils, laces, shirts, drawers, bonnets, hats, caps, turbans, chemisettes, hose, mitts, aprons, stockings, gloves, suspenders, watch chains, webbing, braids, fringes, galloons, tassels, cords and trimmings, sixty per centum ad valorem; on all manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for, fifty per centum ad valorem." The question of law which is presented by the pleadings is—are veils which are not silk veils, but are a manufacture of silk, and are known commercially as crape veils, and not otherwise, liable to a duty of sixty per cent.?

The eighth section of the act of June 30th, 1864, was intended to be a comprehensive section, and to include all articles made of silk, or of which silk is the component material of chief value, by whatever name the articles are known, or for whatever purpose they are used. Congress intended to embrace in one section all the manufactures of silk, and to provide that all the articles which are specifically enumerated in the first clause which has been quoted should pay sixty per cent., and that all articles which are not specifically enumerated in the section should pay fifty per cent. Smythe v. Fiske, 23 Wall. [90 U. S.] 374.

Bearing in mind that the main object of the section was to classify articles according to the material of which they are composed, it is first important to determine the construction which should be given to the term "silk veils," as used in this section of the statute. Two facts are to be noticed—first, that general terms only are used in this section; and next, that it is not claimed that the term "silk veils" is a commercial term, or that it is a commercial designation of any one kind of veils which are made of silk. It is a term which is used in the ordinary signification which belongs to the words of which the term is composed, and, in the absence of any other language in the statute, includes all veils made of silk. "When general terms are used, the terms are to be taken and applied in their ordinary and comprehensive meaning, unless it is shown, (as, I understand, it is not claimed to be shown in this instance,) that they have, in their commercial use, acquired a special and restricted meaning." Lottimer v. Smythe [Case No. 8,523]. It is to be presumed that these words include any veil which is made of silk, although such veil is styled by the importer by a particular name which designates the class or subdivision to which the particular veil belongs. Thus, if the different styles of silk veils are called by different names, such as "Honiton," or "Brussels," or "Point d'Alençon." and are exclusively called by such specific names. their different classes or

styles are still silk veils, and are included within the general term, which is used not for purposes of specific description, but as a comprehensive term to include all veils made of a particular material. Importers cannot withdraw their goods from the operation of the general terms of a statute, which classifies goods according to the material of which they are made, by imposing upon those goods specific names, which designate a particular kind or subdivision of the general class which is mentioned in the statute. "When the goods which are subjects of duty are designated by the material of which they are made or composed, the statute is to be construed as presumptively including such goods, by whatever subordinate or specific name they may be known, and though all in the commercial world are in the habit of using the specific name when they speak of the particular article in question. For example, if we have a tariff act which imposes a particular duty upon cotton goods, if that designation alone is used in the legislation pertaining to the subject of duty upon the importations, it presumably includes all cotton goods, even though importers, merchants, dealers and customers, all the country through, when they speak of a particular kind of goods made of cotton, always give the special name of the article; as, for example, under this attempted illustration, muslin, cambric muslin, cotton drilling, cotton shirting, cotton sheeting." Jaffray v. Murphy [Id. 7,172]. The presumption is, then, that crape veils, being manufactured of silk, are included in the general words of the statute, and are embraced within the term "silk veils," and that presumption will not be rebutted or weakened by proving, merely, that the term "crape veils" is used to discriminate between the kind of veils which is called by that name, and the various other kinds of veils which are made of silk, although it could be shown that the entire body of importers designated this particular article by no other name than crape veils. The mere name which is exclusively applied to the different species of veils is immaterial.

But there is another principle which is well settled in the construction of tariff acts, and which is, that congress must be understood, in the tariff laws, to class articles according to the general usages and known denominations of trade, and, generally, to recognize, in the tariff acts, the known commercial distinctions which are made in the usages of trade, unless congress has indicated, by the language of the statute, an intention to exclude any other classification than the one which it has adopted, or any modification of the classification which it has adopted. Inasmuch as this eighth section is a comprehensive section, intended to include all silk articles, if the first clause was the only clause of the statute which was applicable to veils, such an intention would perhaps be manifested. The statute would then be construed to impose a duty of sixty per cent. upon all veils which are made of silk. But, the statute also provides, that all manufactures of silk, not otherwise provided for, shall pay a duty of fifty per cent. The plaintiffs contend that their goods, being a manufacture of silk, have been, by commercial usage, expressly declared not to be silk veils, and that, in commercial language, they are not made of silk, and having been so declared, and the statute having provided that all other manufactures of silk shall pay a prescribed duty, that this case is brought within the principle which I have just stated. In this position they are sustained by the decisions which have been given both recently and formerly upon this subject.

In order to avail themselves of this principle, the plaintiffs aver, in their replication, that the goods which they imported were not silk veils, but were a manufacture of silk, known as crape veils, and not otherwise. If, under this replication, it is proved, that, in trade and commerce, crape veils are not silk veils, that is, are contradistinguished from silk veils, and are commercially known as different articles from silk veils, and that the term "crape veil" is a distinctive term, which distinguishes the article called by that name from a silk veil, then the term "silk veil" fails to designate a crape veil, and crape veils are dutiable under the clause of the statute which relates to manufactures of silk. If crape veils have thus, in commercial usage, been separated and set apart from the general class to which they presumptively belong, the law infers that congress did not intend to include them among the general class, there being another clause in the statute in which they may be placed. There is, then, a question of fact for the triers to determine, which is, whether these articles are known in trade and commerce as silk veils or not; in other words, are crape veils known in trade as a different article from a silk veil, and, commercially, are they regarded as forming a separate and distinct class of goods from silk veils, and, in commercial language, to be other than silk veils? Inasmuch as this issue of fact is directly presented by the replication, which avers that the veils are not silk veils, and is an issue which, if found in favor of the plaintiffs, is a successful answer to the defendant's plea, the demurrer should be overruled.

The principles which are involved in this case have recently been fully considered by the late circuit judge, in Lottimer v. Smythe [Case No. 8,523], and Jaffray v. Murphy [Id. 7,172], which cases also arose under the silk section of the act of June 30th, 1864. The general rule of law in regard to the effect of commercial usage and designations upon the construction of the tariff laws, is also declared in 200 Chests of Tea, 9 Wheat. [22 U. S.] 430; Elliott v. Swartwout, 10 Pet. [35 U. S.] 137; Curtis v. Martin, 3 How. [44 U. S.] 106; Maillard v. Laurence, 16 How. [57 U.

S.] 251; and U. S. v. Breed [Case No. 14,638].

The demurrer is overruled, with leave to the defendant to plead anew.

[On a writ of error the judgment of this court was affirmed. 96 U. S. 108.]